UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROC-A-FELLA RECORDS, INC.,

              PLAINTIFF,

-AGAINST-

DAMON DASH,

              DEFENDANT.

Case No.   1:21-cv-5411

# MEMORANDUM OF LAW IN SUPPORT OF
# ORDER TO SHOW CAUSE

Dated: June 18, 2021

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Alex Spiro
Luke Nikas
Paul B. Maslo
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
alexspiro@quinnemanuel.com
lukenikas@quinnemanuel.com
paulmaslo@quinnemanuel.com

*Attorneys for Roc-A-Fella Records, Inc.*

## **TABLE OF CONTENTS**

**Page**

Preliminary Statement ........................................................................................................................ 1
Statement of Facts .............................................................................................................................. 3
Argument ............................................................................................................................................ 5
I.      Legal Standard ........................................................................................................................ 5
II.     The Court Should Grant Plaintiff's Request For Injunctive Relief ..................................... 6
        A.     RAF, Inc. Will Suffer Immediate And Irreparable Harm If Injunctive Relief Is Not Granted .................................................................................................. 6
        B.     RAF, Inc. Is Likely To Prevail On The Merits ........................................................ 8
        C.     The Balance Of The Equities Is In RAF Inc.'s Favor ........................................... 11
        D.     The Public Interests Favors Granting Injunctive Relief ........................................ 11
Conclusion ....................................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Am. Stock Transfer & Tr. Co., LLC v. Sykes*,
   2020 WL 7698938 (E.D.N.Y. Dec. 28, 2020) .......................................................................... 10

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015) ...................................................................................................... 6

*BigStar Entm't, Inc. v. Next Big Star, Inc.*,
   105 F. Supp. 2d 185 (S.D.N.Y. 2000) ....................................................................................... 8

*Brenntag Int'l Chems., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) ...................................................................................................... 6

*Destiny USA Holdings, LLC v. Citigroup Glob. Markets Realty Corp.*,
   2009 WL 2163483 (Sup. Ct. Onondaga Co. 2009) ................................................................... 6

*DiFabio v. Omnipoint Commc'ns, Inc.*,
   66 A.D.3d 635 (2d Dept. 2009) ................................................................................................. 6

*Dow Jones & Co. v. Harrods, Ltd.*,
   237 F. Supp. 2d 394 (S.D.N.Y. 2002) ....................................................................................... 9

*Echo Design Grp. v. Zino Davidoff S.A.*,
   283 F. Supp. 2d 963 (S.D.N.Y. 2003) ....................................................................................... 6

*Gallagher v. New York State Bd. of Elections*,
   477 F. Supp. 3d 19 (S.D.N.Y. 2020) ....................................................................................... 11

*Gen. Mills, Inc. v. Chobani, LLC*,
   158 F. Supp. 3d 106 (N.D.N.Y. 2016) .................................................................................... 12

*Giffords Oil Co. v. Wild*,
   106 A.D.2d 610 (2d Dept. 1984) ............................................................................................... 7

*Gowanus Indus. Park, Inc. v. Hess Corp.*,
   2012 WL 273657 (E.D.N.Y. Jan. 31, 2012) .............................................................................. 9

*Hochheiser v. Alin*,
   2018 WL 1528241 (N.Y. Sup. Ct. Suffolk Co. 2018) ............................................................. 11

*In re Los Angeles Dodgers LLC*,
   465 B.R. 18 (D. Del. 2011) ........................................................................................................ 7

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
   596 F.2d 70 (2d Cir. 1979) ........................................................................................................ 6

*Lebowich v. O'Connor*,
   309 F.2d 111 (2d Cir. 1962) ...................................................................................................... 8

*Lia v. Saporito*,
   909 F. Supp. 2d 149 (E.D.N.Y. 2012) ....................................................................................... 9

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*,
   83 A.D.3d 804 (2nd Dept. 2011) ............................................................................................ 9

*Porsch v. LLR, Inc.*,
   380 F. Supp. 3d 418 (S.D.N.Y. 2019) .................................................................................. 10

*Potter v. Cmty. Commc'ns Corp.*,
   2004 WL 550747 (Del. Ch. Mar. 11, 2004) ........................................................................... 7

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
   241 F.3d 232 (2d Cir. 2001) ................................................................................................... 6

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ..................................................................................................... 6

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995) ................................................................................................... 7, 8

*Unicon Mgmt. Corp. v. Koppers Co.*,
   366 F.2d 199 (2d Cir. 1966) ................................................................................................... 5

*Unitel Telecard Distribution Corp. v. Nunez*,
   90 A.D.3d 568 (1st Dept. 2011) ............................................................................................. 9

*Wali v. Coughlin*,
   754 F.2d 1015 (2d Cir. 1985) ................................................................................................. 8

*Williams v. Rosenblatt Sec. Inc.*,
   136 F. Supp. 3d 593 (S.D.N.Y. 2015) .................................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................................. 11

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012) ............................................................................................... 7, 8

## **Statutes**

28 U.S.C. § 2201 ............................................................................................................................ 8

## **Rules**

Fed. R. Civ. P. 57 ........................................................................................................................... 8

Roc-A-Fella Records, Inc. ("RAF, Inc.") respectfully submits this memorandum of law in support of its Order to Show Cause and request for a preliminary injunction and temporary restraining order against Damon Dash ("Dash").

## PRELIMINARY STATEMENT

The clock is ticking. Dash had planned to sell the copyright to Jay-Z's debut album *Reasonable Doubt*, recognized as one of the greatest recordings in history, at an online auction set for June 23, 2021. That auction was cancelled, and Dash is frantically looking for another venue to make the sale. It is not a matter of if, but when. But Dash does not even own *Reasonable Doubt* or its copyright and, therefore, has no right to sell the album or any rights to it. Instead, RAF, Inc. owns all rights to *Reasonable Doubt*. The sale of this irreplaceable asset must be stopped before it is too late.

Shawn Carter, a/k/a Jay-Z ("Jay-Z"), Kareem Burke ("Burke"), and Dash each own one-third of the shares in RAF, Inc. In 1995, RAF, Inc. and Jay-Z inked a record deal under which RAF, Inc. would own, among other things, "[t]he Masters and the LP, from the inception of the recording thereof, and all Phonograph Records and other reproductions made therefrom, together with the performances embodied therein and all copyrights therein and thereto (excluding the copyright in the underlying compositions) throughout the world, and all renewals and extensions thereof . . . ." (Declaration of Shawn Carter a/k/a Jay-Z ("Jay-Z Decl.") Ex. A.) The next year, pursuant to this agreement, Jay-Z released the album *Reasonable Doubt*. The album was a huge success: it is frequently lauded as the one of the greatest rap albums of all time, was certified platinum by the Record Industry Association of America, and has sold well over a million copies. After several decades, RAF, Inc. remains the sole owner of the rights in *Reasonable Doubt*.

During the past year, the market for non-fungible tokens, also called "NFTs," has exploded. A non-fungible token is a unit of data that is "minted" and stored on a digital ledger, called a

blockchain, that certifies a digital asset to be unique and therefore not interchangeable. Simply put, it is a digit asset recorded on the blockchain that shows proof of ownership. NFTs can be created to transfer ownership of virtually any asset—from visual art, to sporting event tickets, to copyrights. NFTs can be freely bought and sold like any other asset, and some NFTs have traded for tens of millions of dollars.

Dash saw an opportunity in this emerging NFT market. The rights to *Reasonable Doubt* are highly valuable and unique. They can be used to create derivative works and generate significant financial and non-financial benefits. There is only one *Reasonable Doubt*—the rights to it are irreplaceable. Dash knew this and sought to cash in. It is believed that Dash has already "minted" an NFT that he claims will prove his ownership of the *Reasonable Doubt* copyright. And Dash intends to cash-in on the NFT as soon as possible.

But, again, Dash does not own *Reasonable Doubt* or the rights he is unlawfully seeking to sell. And Dash's status a minority shareholder in RAF, Inc., gives him no right to sell a company asset. A basic tenet of New York corporate law is that the corporation and its shareholders are distinct entities. An individual shareholder, like Dash, does not own the corporation's assets—only the corporation does—and an individual shareholder cannot sell, transfer, or otherwise encumber a corporate asset.

The bottom line is simple: Dash can't sell what he doesn't own. By even attempting such a sale, Dash has converted a corporate asset and has breached his fiduciary duties. The Court should therefore shut any such auction down, require Dash to return the NFT of *Reasonable Doubt* to RAF, Inc., and hold him accountable for this brazen theft of RAF, Inc.'s most prized asset.

RAF, Inc. easily satisfies the elements for entry of a temporary restraining order and preliminary injunction.

*First*, there is no doubt that RAF, Inc. will suffer irreparable harm because, as even Dash admits, the copyright to *Reasonable Doubt* is a unique asset. Any sale would cloud the title as to the copyright, which, in turn, would impair this unique and irreplaceable asset. This constitutes irreparable harm under New York law.

*Second*, RAF, Inc. is likely to prevail on the merits of its claims for declaratory relief, breach of fiduciary duty, conversion, replevin, and unjust enrichment. The bottom line is that Dash is attempting to sell an asset he doesn't even own without the owner's approval—a quintessential case of wrongdoing that is clearly actionable under numerous common law claims.

*Third*, the balance of equities tips sharply in RAF, Inc.'s favor because, without a temporary restraining order, Dash will sell something he does not own—the copyright to *Reasonable Doubt*. This will, in turn, cause substantial harm to RAF, Inc., the asset's true owner. On the other hand, granting the requested relief will merely preserve the status quo, causing no prejudice to Dash.

*Finally*, injunctive relief will serve the public interest because it will prevent Dash from deceptively and unlawfully auctioning off an asset he does not own, the *Reasonable Doubt* copyright, and therefore will protect further innocent victims from being defrauded by Dash's illicit conduct.

### STATEMENT OF FACTS

**JAY-Z.** Everyone knows who Jay-Z is. (Compl. ¶ 12.) But that wasn't always the case. (*Id.*) It was only through exceptional vision, persistence, and hard work that Jay-Z has attained an extraordinary level of popularity and fame in the United States and around the world. (*Id.*)

Before Jay-Z achieved this success, when no one would give him a record contract, he got his start by selling CDs out of his car in the Brooklyn projects. (*Id.* ¶ 13.) Jay-Z's career took off in 1996 when he released *Reasonable Doubt*, which solidified his standing in the industry and has

now achieved preeminent status.  (*Id.*)  The album is regarded as one of the greatest rap albums of all time.  (*Id.* ¶ 2.)

**OWNERSHIP OF *REASONABLE DOUBT*.**  RAF, Inc. was incorporated in New York on January 8, 1996.  (Jay-Z Decl. ¶ 2; Compl. ¶ 19.)  Jay-Z, Dash, and Burke each own one-third of the shares in RAF, Inc.  (Jay-Z Decl. ¶ 2; Compl. ¶ 20.)

RAF, Inc. owns the copyright and all rights, title, and interests to and in *Reasonable Doubt*, including, without limitation, the right to sell, record, reproduce, broadcast, transmit, exhibit, distribute, advertise, exploit, and perform the same.  (Jay-Z Decl. ¶ 3; Compl. ¶ 21.)  Dash holds no individual ownership interest in *Reasonable Doubt*, including in its copyright.  (Jay-Z Decl. ¶ 4; Compl. ¶ 22.)

**THE PROPOSED AUCTION.**  Dash is brazenly attempting to steal a company asset, mint it as an NFT, and to auction it using an online platform or auction-house that allows people to create, farm, buy, sell, auction, and swap NFTs.  (Jay-Z Decl. ¶ 5, Ex. B; Compl. ¶ 23.)  Recently, Dash collaborated with SuperFarm Foundation ("SuperFarm"), one such online platform, in an attempt to go forward with an auction on June 23, 2021.  (Jay-Z Decl. ¶ 5.)

Although that auction was cancelled, Dash's illicit plan to sell his non-existent property interest in *Reasonable Doubt* was detailed in the SuperFarm auction announcement:

> SuperFarm is proud to announce, *in collaboration with Damon Dash*, the auction of Damon's ownership of the copyright to Jay-Z's first album Reasonable Doubt. This marks a new milestone in the history of NFT's, entitling the new owner to future revenue generated by the unique asset.  The monumental event will last for two days starting on June 23 and concluding on June 25.  SuperFarm is excited to host this truly remarkable auction and immortalize one of the world's greatest artists on the blockchain!
>
> . . . .
>
> Selling the copyright to Jay-Z's Reasonable Doubt as an NFT is a groundbreaking landmark—both for the crypto space and the broader music industry.  *The newly minted NFT will prove ownership of the album's copyright, transferring the rights*

4

> *to all future revenue generated by the album from Damon Dash to the auction winner*.
>
> The whole process will occur on-chain *thanks to the magic of* the Ethereum blockchain and SuperFarm's innovative blockchain technology. The significance of this NFT auction cannot be overstated as it will set a precedent for how artistically created value and its ownership can be proven, transferred, and monetized seamlessly through a public blockchain.
>
> The NFT auction will kick off on June 23 on SuperFarm.com and last for two days . . . . SuperFarm is thrilled to take this major step and strengthen its place as a leading innovator in the blockchain space and the go-to NFT platform for creators, collectors, gamers, and investors.

(Jay-Z Decl. ¶ 5, Ex. B at 1-2; Compl. ¶ 24 (emphasis added).)

As the auction announcement makes clear, Dash represents that he owns—and intends to sell—the copyright and "rights to all future revenue generated by the album[.]" (Jay-Z Decl. ¶ 5, Ex. B at 1, 2; Compl. ¶ 24.) That is false. Dash merely owns a 1/3 interest in RAF, Inc. (Jay-Z Decl. ¶ 2; Compl. ¶ 20.)

SuperFarm called off the auction after receiving a letter from RAF, Inc.'s attorneys explaining why the auction would be unlawful. (Jay-Z Decl. ¶ 7.) RAF, Inc.'s attorneys sent a similar letter to Dash. (Jay-Z Decl. ¶ 8, Ex. D; Compl. ¶ 27.) But Dash has not responded and is doing everything within his power to find a replacement for SuperFarm. (Jay-Z Decl. ¶ 8; Compl. ¶ 27.)

**CLAIMS.** RAF, Inc. alleges the following claims against Dash: declaratory judgment (Compl. ¶¶ 28-32); breach of fiduciary duty (*id.* ¶¶ 33-37); conversion (*id.* ¶¶ 38-45); replevin (*id.* ¶¶ 46-52); and unjust enrichment (*id.* ¶¶ 53-56).

## ARGUMENT

### I.   LEGAL STANDARD

The purpose of a preliminary injunction is to "preserve the status quo." *Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966). "Whether to grant or deny a preliminary

injunction lies within the sound discretion of the district court." *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 616 (S.D.N.Y. 2015) (citing *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir. 2001)). A party seeking a preliminary injunction must show (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)). The temporary restraining order standard is the same. *See, e.g.*, *Echo Design Grp. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).

## II.    THE COURT SHOULD GRANT PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

### A.    RAF, Inc. Will Suffer Immediate And Irreparable Harm If Injunctive Relief Is Not Granted

"[I]rreparable injury means injury for which a monetary award cannot be adequate compensation," *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam), or "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied," *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999); *see also DiFabio v. Omnipoint Commc'ns, Inc.*, 66 A.D.3d 635, 636–37 (2d Dept. 2009) ("Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient.").

As such, "New York courts have long recognized irreparable harm where, as here, the damages are either speculative, difficult to determine or otherwise incapable of measurement." *Destiny USA Holdings, LLC v. Citigroup Glob. Markets Realty Corp.*, 2009 WL 2163483, at \*16

6

(Sup. Ct. Onondaga Co. 2009) (collecting cases); *accord Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 38 (2d Cir. 1995). This is often the case when there is a "unique asset" at issue. *See, e.g.*, *Tom Doherty Assocs.*, 60 F.3d at 38 ("We have also found irreparable harm in the loss of a relatively unique product."); *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 35 (D. Del. 2011) (irreparable harm because "the right to telecast Dodgers games is a unique asset that cannot be replaced"); *Potter v. Cmty. Commc'ns Corp.*, 2004 WL 550747, at *3 (Del. Ch. Mar. 11, 2004) (irreparable harm because the parties' contract acknowledged that "control of the programming rights is a unique asset"); *Giffords Oil Co. v. Wild*, 106 A.D.2d 610, 610 (2d Dept. 1984) (parties agreed that improper use of customer list would be the proper subject of injunctive relief given that the customer list was "a valuable and unique asset"). For example, in *WPIX, Inc. v. ivi, Inc.*, there was irreparable harm because the "retransmissions of plaintiffs' copyrighted programming over the Internet would substantially diminish the value of the programming," and "plaintiffs' losses would be difficult to measure," such that "monetary damages would be insufficient to remedy the harms." 691 F.3d 275, 285 (2d Cir. 2012).

So too here. Dash has "minted" an NFT that he claims will prove his ownership of *Reasonable Doubt*, and he is doing everything in his power to sell the NFT to the highest bidder. By Dash's own admission, the *Reasonable Doubt* copyright is a "unique asset." (Jay-Z Decl. ¶ 5, Ex. B at 1; *see also id.* ¶ 6 ("The album *Reasonable Doubt* is a highly unique and irreplaceable asset, and the wrongful sale of any rights to the album would result in irreparable harm to RAF, Inc.").) But Dash does not own the copyright. Nor does he have any right to convey RAF Inc.'s interest in the copyright.

Any purported sale of the copyright will therefore irreparably harm RAF, Inc.: the sale will cloud the title as to the copyright, which, in turn, will impair its value. *See WPIX*, 691 F.3d at 285

(irreparable harm where "retransmission of plaintiffs' copyrighted programming over the Internet would substantially diminish the value of the programming"). RAF Inc.'s losses "would [also] be difficult to measure and monetary damages would be insufficient to remedy the harms," *id.*, particularly because the *Reasonable Doubt* copyright is a "unique asset," *see Tom Doherty Assocs.*, 60 F.3d at 38 (injunctive relief was appropriate "to avoid the unfairness of denying an injunction to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits with the rule that [the quantification of] damages must be based on more than speculation"). Therefore, RAF, Inc. has established that it will suffer immediate and irreparable harm in the absence of a temporary restraining order.

### B. *RAF, Inc. Is Likely To Prevail On The Merits*

To establish a likelihood of success on the merits, a plaintiff "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent.'" *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). Here, RAF, Inc. has demonstrated a likelihood of success on its claims well beyond fifty percent.

**Declaratory Relief.** The Declaratory Judgement Act provides that in "a case of actual controversy within its jurisdiction," a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. "For an issue to be justiciable it must be definite and concrete, must touch the legal relations of the parties, and must be subject to a judicial grant of a specific relief through a court decree of a conclusive character." *Lebowich v. O'Connor*, 309 F.2d 111, 114 (2d Cir. 1962).

For example, courts have frequently held that a "justiciable controversy" exists when the parties dispute the ownership of a piece of property. *See, e.g.*, *Lia v. Saporito*, 909 F. Supp. 2d 149, 170 (E.D.N.Y. 2012) (plaintiff's allegations established a justiciable controversy where plaintiff alleged a real dispute between the parties involving interests in real property); *Gowanus Indus. Park, Inc. v. Hess Corp.*, 2012 WL 273657, at *19 (E.D.N.Y. Jan. 31, 2012) ("The parties' dispute over ownership of the parcels presents a justiciable question.").

Here, there is a "justiciable controversy" because Dash has "minted" an NFT that he claims will prove his ownership of *Reasonable Doubt*, and he is doing everything in his power to sell the NFT to the highest bidder. Dash has been prevented from doing so only because SuperFarm cancelled the auction that was set for June 23, 2021. Dash, however, is seeking out another venue to make the sale. But Dash has no ownership interest in the *Reasonable Doubt* copyright. Rather, the copyright is held by RAF, Inc. (Jay-Z Decl. ¶¶ 3, 4.) Thus, this case is tailor-made for a declaratory judgment: The Court may "define the legal relationships and adjust the attendant rights and obligations at issue between the parties so as to avoid the dispute escalating into additional wrongful conduct." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002); *see also Gowanus Indus. Park*, 2012 WL 273657, at *19; *Lia*, 909 F. Supp. 2d at 170.

**Breach of Fiduciary Duty.** To establish breach of fiduciary duty, a plaintiff must demonstrate (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. *See Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 807 (2nd Dept. 2011). Here, RAF, Inc. has shown that it is likely to prevail on its claim for breach of fiduciary duty: (1) Dash, "as [a] shareholder[] in a close corporation, owe[s] fiduciary duties to" RAF, Inc., *Unitel Telecard Distribution Corp. v. Nunez*, 90 A.D.3d 568, 569 (1st Dept. 2011); (2) Dash has breached his duty of loyalty to RAF,

9

Inc. by attempting to auction off or otherwise sell RAF Inc.'s most valuable asset; and (3) this has caused direct damages to RAF, Inc. and its shareholders by impairing the value of the *Reasonable Doubt* copyright. Therefore, RAF, Inc. has established that it is likely to prevail on its claim for breach of fiduciary duty.

**Conversion.** This is a straightforward case of conversion. The "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 428 (S.D.N.Y. 2019) (citation omitted). Both elements are satisfied here because RAF, Inc. owns the rights to *Reasonable Doubt*, including its copyright (Jay-Z Decl. ¶ 3), and Dash has stolen and claims that he owns the copyright to *Reasonable Doubt* (*id.* ¶ 5). But Dash knows that he has no individual ownership rights in *Reasonable Doubt*. As such, Dash has exercised unauthorized dominion over RAF, Inc.'s property, in which it has legal title and a superior right of possession. Through his actions, Dash has acted to exclude RAF, Inc. and the other shareholders from the benefits of that asset. He's also refused to return RAF, Inc.'s property, despite knowing that he has no individual ownership rights to *Reasonable Doubt*. (*Id.* ¶¶ 7, 8.) Dash has therefore converted *Reasonable Doubt* to his own use.

**Replevin.** "To establish a claim for replevin, the plaintiff must prove two elements: (1) that plaintiff has a possessory right superior to that of the defendant; and (2) that plaintiff is entitled to the immediate possession of that property." *Am. Stock Transfer & Tr. Co., LLC v. Sykes*, 2020 WL 7698938, at *4 (E.D.N.Y. Dec. 28, 2020) (citation omitted). Again, both elements are satisfied here. RAF, Inc. owns the *Reasonable Doubt* copyright. (Jay-Z Decl. ¶ 3.) Dash does not. He has stolen and claims that he owns the copyright to *Reasonable Doubt*. But Dash knows that he has no individual ownership rights in *Reasonable Doubt* and that he is in unauthorized possession of

assets reflecting ownership of the copyright.  RAF, Inc. has demanded that Dash return the property, including any NFTs reflecting ownership of *Reasonable Doubt*. (*Id.* ¶ 8.)  He has refused. (*Id.*)  Dash is therefore in unlawful and wrongful possession of RAF, Inc.'s property.

**Unjust Enrichment.**  "It is well settled that [t]o prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered."  *Hochheiser v. Alin*, 100 N.Y.S.3d 609, 2018 WL 1528241, at *8 (N.Y. Sup. Ct. Suffolk Co. 2018) (quotation marks and citation omitted).  As shown above, if Dash is permitted to auction or sell the *Reasonable Doubt* copyright, he will be enriched at RAF, Inc.'s expense, and it would be inequitable for him to retain the proceeds from the sale or auction because he does not own the rights he is purporting to sell—only RAF, Inc. does.

### C. The Balance Of The Equities Is In RAF Inc.'s Favor

"In assessing the balance of the equities, the court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 49 (S.D.N.Y. 2020) (citation omitted).  Here, the balance of the equities tips sharply in RAF, Inc.'s favor.  If there is no injunctive relief, Dash will purport to sell something he does not own—the copyright to *Reasonable Doubt*.  This will cause substantial harm to RAF, Inc. by clouding the title as to the copyright for *Reasonable Doubt* and thus diminishing its value. (Jay-Z Decl. ¶ 6.)  On the other hand, granting injunctive relief will merely preserve the status quo, causing no prejudice to Dash.  Therefore, the balance of the equities tip in RAF, Inc.'s favor.

### D. The Public Interests Favors Granting Injunctive Relief

"In exercising their sound discretion, courts of equity should pay particular regard [to] the public consequences in employing the extraordinary remedy of injunction."  *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  Here, injunctive relief will protect the public because it will prevent Dash from purporting to sell an asset he does not own:  the *Reasonable Doubt* copyright.  "[T]he public interest is served by preventing customer confusion and deception," *Gen. Mills, Inc. v. Chobani, LLC*, 158 F. Supp. 3d 106, 121 (N.D.N.Y. 2016) (citation omitted), as would occur here if a sale is allowed to proceed.  Accordingly, the public interests favors granting an injunction.

## CONCLUSION

The Court should grant RAF, Inc.'s request for a temporary restraining order and preliminary injunction in its entirety.  RAF, Inc. has established that it will suffer irreparable harm in the absence of injunctive relief, that it is likely to prevail on the merits, that the balance of equities is in its favor, and that the public interest is served by granting injunctive relief.  Accordingly, RAF, Inc. is entitled to an order temporarily and preliminarily enjoining Dash from altering in any way, selling, assigning, pledging, encumbering, contracting with regard to, or in any way disposing of any property interest in *Reasonable Doubt*, including its copyright, pending a final determination of the above-captioned lawsuit.

Dated: June 18, 2021
New York, New York                     Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Alex Spiro*
    Alex Spiro
    Luke Nikas
    Paul B. Maslo
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    Telephone: (212) 849-7000
    alexspiro@quinnemanuel.com
    lukenikas@quinnemanuel.com
    paulmaslo@quinnemanuel.com

    *Attorneys for RAF, Inc.*

12