**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

ROC-A-FELLA RECORDS, INC.,

                      Plaintiff,

    -against-

DAMON DASH,

                      Defendants.
------------------------------------------------------------------------X

Case No.    1:21-cv-5411

**DECLARATION OF**
**DAMON DASH IN**
**OPPOSITION**

I, Damon Dash, hereby declare that the following statements are true under the penalties of perjury:

1.    I am a shareholder, initial and sole director, CEO/President of Roc-A-Fella Records, Inc. ("RAF). I respectfully submit this declaration in opposition to the Plaintiff's Order to Show Cause, which seeks, *inter alia*, a restraining order and/or injunction barring me from altering in any way, selling, assigning, pledging, encumbering, contracting with regard to, or in any way disposing of any property interest in Reasonable Doubt, including its copyright and including through any means, such as auctioning a non-fungible token ("NFT") reflecting such interests, based on my personal knowledge in dealings with RAF; also, in support of my motion to disqualify the law firm of Quinn Emanuel from further representing RAF in this action.

2.    As a preliminary matter, I do not oppose any branch of the motion that seeks me (or any RAF shareholders) from altering in any way, selling, assigning, pledging, encumbering, contracting with regard to, or in any way disposing of the Reasonable Doubt copyright as I do not own the copyright nor have I ever represented that I do. I only oppose the portion of this

1

motion, which can be read as precluding me from disposing of my one-third interest in RAF (i.e., my shares in RAF) as there is no basis in fact, or law, to preclude me from selling, assigning, pledging, encumbering, or contracting with regards to this property interest of which I solely own.

    i.    ***Formation of RAF, Its Corporate Governance And Recording Agreement With Jay-Z***

3. RAF is a domestic New York corporation that was incorporated on January 8, 1996. From inception, its sole shareholders have been myself, Shawn Carter ("Jay-Z") and Kareem Burke ("Burke").

4. RAF was created as a record label with the purpose of exhibiting and showcasing artists within the music industry - the first being Jay-Z.

5. Accordingly, as Plaintiff correctly notes, on or around October 1, 1995, RAF and Jay-Z inked a record deal under which RAF would own, among other things, "[t]he Masters and the LP, from the inception of the recording thereof, and all Phonograph Records and other reproductions made therefrom, together with the performances embodied therein and all copyrights therein and thereto (excluding the copyright in the underlying compositions) throughout the world, and all renewals and extensions thereof . . . ." *See* § 4.01 of the Recording Agreement, which is attached as Ex. A to the Complaint.

6. As is plainly evidenced in the signature blocks of the Recording Agreement, Jay-Z signed above his name (as the recording artist) and I signed the document as RAF's *authorized signatory* because I was the only one vested with authority to enter into agreements on behalf of RAF prior to its corporate formation.

7. Moreover, even after its corporate formation, I retained this exclusive authority as the initial and sole director and CEO/President of RAF whereas, to the best of my knowledge,

neither Jay-Z nor Burke have ever been duly appointed as an officer, director, or otherwise "authorized party."

***RAF's Ownership Of The Reasonable Doubt Copyright***

8. In 1996, pursuant to the aforementioned Recording Agreement, Jay-Z released his debut album *Reasonable Doubt* ("RD") of which the copyright and all rights, title, and interests to, including, without limitation, right to sell, record, reproduce, broadcast, transmit, exhibit, distribute, advertise, and exploit the album was vested in RAF.

***There Is No Documentation That Precludes Me From Selling, Encumbering, Or Transferring My 1/3 Interest in RAF And Jay-Z's Frantic Efforts To Obtain My 1/3rd Interest.***

9. As Plaintiff's moving papers make clear, RAF still owns its 100% interest in the *Reasonable Doubt* copyright much like I own my one-third (1/3) interest in RAF.

10. Accordingly, as a co-owner of RAF with an undisputed 1/3 shareholder ownership interest in RAF, I had (and still have) the ability to sell, encumber, transfer my shares in RAF without interference from RAF, or its shareholders.

11. To that end, I attempted to sell my 1/3 interest in RAF in or around March of 2020 and none other than Jay-Z, by and through his personal counsel (the law firm of Reed & Smith LLP), offered to purchase said interest. Nevertheless, since his offer was far below the market value of this interest (as RAF owns the copyright to one of the most unique, critically acclaimed and iconic debut albums in music history – i.e., Reasonable Doubt), I declined to move forward with any such sale to him.

12. This undoubtedly upset him since, upon information and belief, Jay-Z owns all of his master recordings except RD, which is owned by RAF.

13. Shortly after I declined to move forward with this offer, the parties ended all negotiations and sometime thereafter, I was made aware of the marketplace for non-fungible tokens ("NFT") that were being sold on block chains. Since these were gaining a lot of interest and attention worldwide I decided to explore the idea of an NFT auction for my one-third interest in RAF.

14. To that end, I eventually connected with one of the leaders in the NFT industry, SuperFarm Foundation ("SuperFarm") to assist in a potential NFT auction.

15. At no time did I represent to SuperFarm that I owned 100% of the RD copyright, directly or indirectly, or that I wanted to mint an NFT based on said copyright. I did not even indicate that I would mint my 1/3 interest. Instead, our understanding and agreement was to mint a hologram, which in turn, would be a digital representation of my 1/3 interest in RAF – nothing more.

16. For reasons unknown, in anticipation of the NFT auction, SuperFarm prepared some internal memos, which included the documentation identified in Exhibit B to the Complaint. To be clear, I had no involvement in the creation of that document, which I understood to be non-public and internal.

17. Nevertheless, for reasons unknown, the document had incorrect information insofar as it implicated that 100% of the copyright to RD was being auctioned as an NFT since that never was going to happen; however, before this error could be corrected Jay-Z's personal attorney's, under the guise of claiming that they were counsel to RAF, sent SuperFarm a cease and desist letter ("Letter"). A true copy of the letter is attached hereto as **Exhibit A**.

18. It should be well noted that outside of myself as the sole, initial director, CEO/President of RAF, no other person has authority on behalf of RAF to enter into contracts or to retain counsel to cause such a letter to be sent.

19. In any event, upon receipt of the Letter, SuperFarm immediately halted any and all advertisements, cancelled the two-day auction, and terminated their contractual relationship with me. As such, the auction never happened; and to be clear nothing was ever minted!

20. Despite halting a lawful auction, and having knowledge that nothing was ever minted, upon information and belief, Jay-Z, without any legal authority to do so, used his personal counsel, Quinn Emmanuel, to file this frivolous and unauthorized action most likely in an effort to force me into sell my 1/3 interest to him at some unfair price.

21. This Court should be made aware of the tactics Jay-Z and his counsel have been using to tortiously interefere with my rights to sell, transfer, or otherwise dispose of my 1/3 interest in RAF.

22. By my count, Jay-Z, with knowledge that he is not a director, officer or otherwise authorized party of RAF, has twice caused his personal attorneys to unlawfully take action as "counsel" for RAF in an adverse way against me – once to tortiously interfere with my contractual relations with SuperFarm and the other to file this lawsuit, which effectively seeks to either prevent me from doing something I am lawfully allowed to do (i.e., sell my one-third interest in RAF) or compel me to do something that is impossible/moot (e.g. I never tried to mint 100% of the RD copyright as an NFT or offer the same for sale; I never minted any NFT so there is nothing to turnover).

23. So if anyone is getting desperate or frantically making moves to try and get the interest at issue, it is Jay-Z; and, it is he who should be stopped by this Court from unlawfully

using his personal counsel to file lawsuits in the name of RAF to prevent me from doing what I am lawfully allowed to do – *i.e.*, sell my interest in RAF to whomever by any means and for whatever price.

***Quinn Emmanuel's Concurrent Representation Presents An Incurable Conflict Of Interest***

24. But Jay-Z already knows that RAF has no standing to bring this suit nor does his attorneys have authority to act on RAF's behalf, which is why on June 21, 2021 (days after RAF commenced this lawsuit) his personal counsel sent out an emergency "Notice of Special Board of Director's Meeting" to take place the next day, on June 22, 2021. The purpose of the meeting was to schedule a shareholder meeting for a shareholder vote on bylaws. However, at the telephonic meeting, which I objected to even taking place, it should be noted that Jay-Z appeared with his personal counsel, Alex Spiro of Quinn Emmanuel, who is the lead attorney that filed this meritless action on behalf of RAF. It should be further noted that Jay-Z sought to appoint himself as a temporary director at this meeting (indicating that he never had such authority unlike myself). Lastly, it should be noted that the *sham* meeting was held on his personal lawyers' (Reed Smith) teleconference line wherein these same lawyers were ostensibly acting as the *de facto* "secretary" of the unlawfully called meeting.

25. Accordingly, this Court should disqualify Quinn Emmanuel from further representing RAF in this action as they have a clear conflict of interest.

## **CONCLUSION**

26. For the foregoing reasons, I ask that the Court deny RAF's motion as its clear that they had no authority to file this action; there is zero likelihood of success on any of its claims brought in this case; and, I would be unduly prejudiced if this Court entered a broad injunction

that precluded me from selling my undisputed interest in RAF in any manner that I please and for whatever price I (not Jay-Z) deem acceptable.

27. Indeed, Jay-Z knows that in stopping the NFT auction of my one-third interest in RAF he has cost me millions in dollars in damages all while he goes out and mints his own NFTs using similar RD promotional material, which infringes on RAF's copyright. *See, e.g.,* https://stupiddope.com/2021/06/25/jay-z-derrick-adams-celebrate-25th-anniversary-of-reasonable-doubt-album-with-nft-auction-at-sothebys/ (last visited June 25, 2021).

28. Lastly, as further explained in my attorney's cross-motion papers, Quinn Emmanuel should be disqualified from concurrently representing RAF in this action while representing Jay-Z, individually, in the ongoing RAF shareholder governance matters.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 25, 2021
      Los Angeles, California

_____
                              Damon Dash