UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROC-A-FELLA RECORDS, INC.,<br><br>　　　　　　PLAINTIFF,<br><br>　-AGAINST-<br><br><br>DAMON DASH,<br><br>　　　　　　DEFENDANT. | Case No. 1:21-cv-05411-JPC<br><br>Hon. John P. Cronan |

**CONSOLIDATED REPLY IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE
AND OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY COUNSEL**

Dated: June 28, 2021                     **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

　　　　　　　　　　　　　　　　　　　　Alex Spiro
　　　　　　　　　　　　　　　　　　　　Luke Nikas
　　　　　　　　　　　　　　　　　　　　Paul B. Maslo
　　　　　　　　　　　　　　　　　　　　51 Madison Avenue, 22nd Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10010
　　　　　　　　　　　　　　　　　　　　Tel: (212) 849-7000
　　　　　　　　　　　　　　　　　　　　Fax: (212) 849-7100
　　　　　　　　　　　　　　　　　　　　alexspiro@quinnemanuel.com
　　　　　　　　　　　　　　　　　　　　lukenikas@quinnemanuel.com
　　　　　　　　　　　　　　　　　　　　paulmaslo@quinnemanuel.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Roc-A-Fella Records, Inc.*

1

## T<small>ABLE</small> O<small>F</small> C<small>ONTENTS</small>

**Page**

Preliminary Statement ..................................................................................................................1

Argument .....................................................................................................................................2

I.     Dash Does Not Oppose The Injunctive Relief Sought By RAF, Inc. ................................2

II.    There Is No Basis To Disqualify RAF Inc.'s Counsel Of Choice .....................................3

Conclusion ...................................................................................................................................6

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bartolini v. Mongelli*, |
  2018 WL 2725417 (E.D.N.Y. June 5, 2018) .......................................................................... 4, 5

*Bd. of Ed. of City of N.Y. v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979) .......................................................................................... 1, 4, 5

*Bennett Silvershein Assocs. v. Furman*,
  776 F. Supp. 800 (S.D.N.Y. 1991) ......................................................................................... 3

*Bobal v. Rensselaer Polytechnic Inst.*,
  916 F.2d 759 (2d Cir. 1990) ................................................................................................... 4

*Matter of Bohack Corp.*,
  607 F.2d 258 (2d Cir. 1979) ................................................................................................... 3

*Bulkmatic Transp. Co. v. Pappas*,
  2001 WL 504841 (S.D.N.Y. May 11, 2001) .......................................................................... 5

*Decker v. Nagel Rice LLC*,
  716 F. Supp. 2d 228 (S.D.N.Y. 2010) .................................................................................... 3

*Fox v. Idea Sphere, Inc.*,
  2013 WL 1191743 (S.D.N.Y. Mar. 21, 2013) ........................................................................ 5

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005) ................................................................................................... 3

*McAlinden v. Wiggins*,
  543 F. Supp. 1004 (S.D.N.Y. 1982) ....................................................................................... 5

*Persh v. Peterson*,
  2015 WL 5773566 (S.D.N.Y. Oct. 2, 2015) ........................................................................... 5

*S.E.C. v. Byers*,
  609 F.3d 87 (2d Cir. 2010) ..................................................................................................... 3

### Rules

N.Y. Rules of Prof'l Conduct R. 1.7 ............................................................................................. 4

**PRELIMINARY STATEMENT**

Dash does not oppose RAF, Inc.'s request for injunctive relief. (Dash Decl. ¶ 2.) That's no surprise: he was caught red-handed trying to steal and auction RAF, Inc.'s property, a NFT of the copyright to Jay-Z's debut album *Reasonable Doubt*. Dash tries to backtrack, claiming that he intended to sell only his one-third interest in RAF, Inc., and for "reasons unknown" SuperFarm misunderstood his intentions. (*Id.* ¶ 17) That's obviously a lie, but nonetheless, it's irrelevant here: RAF, Inc. is not currently asking the Court to prevent Dash from selling his interest in the company; that's a fight for another day. The Court should enter the preliminary injunction contemplated by the Order to Show Cause, without a hearing, on consent.

After conceding that RAF, Inc. is entitled to a preliminary injunction, Dash argues that Quinn Emanuel should be disqualified because the firm "cannot play the role of corporate counsel in an adversarial relationship to Dash all while simultaneously playing the role of personal counsel to Jay-Z in RAF[, Inc.] corporate governance matters[.]" (Op. Br. 9.) Dash's argument is so absurd that it clearly violates Rule 11 and is barely worth a response. Disqualification is warranted if (1) "an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client" or (2) "the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Bd. of Ed. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Dash doesn't come close to meeting this standard. There is no conflict in the first place. Dash was trying to steal RAF, Inc.'s property—to the detriment of the company and its other shareholders. Jay-Z and RAF, Inc.'s interests are therefore directly aligned. Nor does Quinn Emanuel have "privileged information concerning the other side through prior representation." The firm has never represented Dash, and it has not represented RAF, Inc. in any matters through which it acquired *any* of Dash's privileged information. Further, the board meeting lasted for about ten minutes (it would have been even

shorter if Dash didn't explode in an angry, unprofessional, and incoherent rant), and its purpose was to schedule a subsequent shareholder vote. (Siev Decl. ¶¶ 3, 6.) This does not create a conflict, and Dash did not object to Quinn Emanuel's representation of Jay-Z at the meeting. (*Id.* ¶ 5.)

For these reasons, the Court should issue the requested preliminary injunction, which even Dash agrees is appropriate, and deny Dash's frivolous motion to disqualify.

## ARGUMENT

**I.   DASH DOES NOT OPPOSE THE INJUNCTIVE RELIEF SOUGHT BY RAF, INC.**

Dash was caught mid-theft, in the process of auctioning RAF, Inc.'s property: the copyright to *Reasonable Doubt*. (*See, e.g.*, Jay-Z Decl. ¶ 5.) Accordingly, RAF, Inc. filed this lawsuit and request for emergency relief. Shortly thereafter, on June 22, 2021, the Court entered a TRO and ordered Dash to show cause "why an Order should not be issued under Rule 65 of the Federal Rules of Civil Procedure enjoining [him] from altering in any way, selling, assigning, pledging, encumbering, contracting with regard to, or in any way disposing of any property interest in *Reasonable Doubt*." (ECF No. 14 at 1.) Dash has not done so. On the contrary, he agrees that an injunction is appropriate:

> As a preliminary matter, I do not oppose any branch of the motion that seeks me (or any RAF shareholders) from altering in any way, selling, assigning, pledging, encumbering, contracting with regard to, or in any way disposing of the Reasonable Doubt copyright as I do not own the copyright nor have I ever represented that I do.

(Dash Decl. ¶ 2.)[1]

---

[1] In preparation for Dash's planned sale, SuperFarm prepared a three-page press release. There, it detailed how Dash would "mint" an NFT that would "prove ownership of [*Reasonable Doubt*'s] copyright" and "transfer[] the rights to all future revenue generated by the album from Damon Dash to the auction winner." (ECF No. 7 at 19.) While Dash now claims that the press release was "incorrect" and that he really planned to sell his one-third interest in RAF, Inc., not the *Reasonable Doubt* copyright (Dash Decl. ¶ 17), there is no evidence to support that position and no reason to believe that SuperFarm would have made such an egregious mistake. Dash himself can't even think of a reason: he attributes these supposed inaccuracies to "reasons unknown." (*Id.*)

2

The Court should therefore enter the requested preliminary injunction without a hearing, on consent. *See, e.g.*, *S.E.C. v. Byers*, 609 F.3d 87, 93 (2d Cir. 2010) (district court did not err when it entered a preliminary injunction, without performing an analysis under Rule 65, because "the preliminary injunction . . . issued on the consent of the parties").[2]

## II. THERE IS NO BASIS TO DISQUALIFY RAF INC.'S COUNSEL OF CHOICE

Dash argues that Quinn Emanuel should be disqualified because the firm represents RAF, Inc. and one of its shareholders, Jay-Z. (Op. Br. at 9.) This argument is frivolous and should be summarily rejected.

"'Motions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are often interposed for tactical reasons' and may have significant adverse consequences to the client." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991)). The Second Circuit is "loathe to separate a client from his chosen attorney where the alleged misconduct does not prejudice an opposing party and taint the litigation in which he is appearing." *Matter of Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979). Thus, "[a]lthough any doubts are to be resolved in favor of disqualification, the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary." *Decker*, 716 F. Supp. 2d at 231-32 (footnotes omitted).

In ruling on a motion to disqualify, a court may consult the disciplinary rules of the American Bar Association and New York State, but those rules are not binding authority. *See, e.g.*, *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). As

---

[2] Dash says he opposes the relief sought by RAF, Inc. to the extent it "can be read as precluding [him] from disposing of [his] one-third interest in RAF[, Inc.]" (Dash Decl. ¶ 2.) The Order to Show Cause does not preclude Dash from selling his one-third interest in RAF, Inc. (*See* ECF No. 14 at 1.) The question whether Dash can sell his interest in RAF, Inc.—and whether his interest even has any value given that he doesn't personally own RAF Inc.'s assets and he's only a minority shareholder—presents several legal and practical issues that are not currently before the Court.

3

such, "not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* Rather, "with rare exceptions, disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *accord Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990). Rule 1.7 provides that, absent informed consent confirmed in writing, "a lawyer shall not represent a client if a reasonable lawyer would conclude that either[] (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." N.Y. Rules of Prof'l Conduct R. 1.7.

Dash doesn't come remotely close to meeting these standards. Dash argues that "Quinn Emanuel cannot play the role of corporate counsel in an adversarial relationship with Dash while simultaneously playing the role of personal counsel to Jay-Z in RAF[, Inc.] corporate governance matters." (Op. Br. 9). This argument is meritless for several reasons.

*First*, the representation will not "involve the lawyer in representing differing interests." Jay-Z is not adverse to RAF, Inc., either in this proceeding or with respect to corporate governance matters. On the contrary, the interests of Jay-Z and RAF, Inc.—preventing Dash's unlawful sale of the *Reasonable Doubt* copyright—are entirely aligned. *See, e.g.*, *Bartolini v. Mongelli*, 2018 WL 2725417, at *4 (E.D.N.Y. June 5, 2018) (denying motion to disqualify counsel for co-defendants where there was "no plausible argument—let alone any evidence—that [the co-defendants had] any differing interests"). As numerous courts have held, "[t]he mere fact of joint

4

representation does not raise the risk of trial taint when an attorney represents two or more clients who are similarly situated with regard to a lawsuit." *Id.* (quoting *Bulkmatic Transp. Co. v. Pappas*, 2001 WL 504841, at *3 (S.D.N.Y. May 11, 2001)); *see also Fox v. Idea Sphere, Inc.*, 2013 WL 1191743, at *24 (S.D.N.Y. Mar. 21, 2013) (disqualification not required where the same attorney represented a corporation and its controlling shareholder in a contract dispute); *McAlinden v. Wiggins*, 543 F. Supp. 1004, 1006 (S.D.N.Y. 1982) (disqualification not required where the same attorney represented a corporation and its president/managing director against common-law fraud claims).

*Second*, there is no "risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." Dash identifies absolutely no basis for invoking this section of Rule 1.7.

*Third*, Quinn Emanuel has never represented Dash, so there is no way the firm is "in a position to use privileged information concerning [Dash] through prior representation." *Nyquist*, 590 F.2d at 1246. Nor would the firm be privy to privileged information that it could use against Dash by serving as Jay-Z's counsel in the boardroom, especially during a brief meeting called only to schedule a shareholder vote. (Siev Decl. ¶¶ 3, 6.)

*Finally*, Dash's assertion that "Quinn Emmanuel cannot play the role of corporate counsel in an adversarial relationship to Dash all while simultaneously playing the role of personal counsel to Jay-Z in RAF[, Inc.] corporate governance matters" (Op. Br. 9) is exactly the type of "[v]ague and conclusory allegation[] [that is] insufficient to meet the burden required to disqualify counsel." *Persh v. Peterson*, 2015 WL 5773566, at *5 (S.D.N.Y. Oct. 2, 2015). In short, "[Dash's] argument is just warrantless speculation that is insufficient to meet the high standard required for disqualification under Rule 1.7(a)." *Bartolini*, 2018 WL 2725417, at *4.

## CONCLUSION

As Dash concedes, the Court should enter a preliminary injunction enjoining him from altering in any way, selling, assigning, pledging, encumbering, contracting with regard to, or in any way disposing of any property interest in *Reasonable Doubt*, including its copyright, pending a final determination of this lawsuit. And, for the reasons discussed above, the Court should deny Dash's frivolous motion to disqualify.

Dated: June 28, 2021

                                           Respectfully submitted,

                                           **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

                                           By: */s/ Alex Spiro*
                                                 Alex Spiro
                                                 Luke Nikas
                                                 Paul B. Maslo
                                                 51 Madison Avenue, 22nd Floor
                                                 New York, NY 10010
                                                 Telephone: (212) 849-7000
                                                 alexspiro@quinnemanuel.com
                                                 lukenikas@quinnemanuel.com
                                                 paulmaslo@quinnemanuel.com

                                                 *Attorneys for RAF, Inc.*