UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROC-A-FELLA RECORDS, INC., <br><br>          PLAINTIFF, <br><br> -AGAINST- <br><br> DAMON DASH, <br><br>          DEFENDANT. | Case No. 1:21-cv-05411-JPC <br><br> Hon. John P. Cronan <br><br> **ESI PLAN AND [Proposed] ORDER** |

**The parties in this action stipulate and agree that the following ESI Plan and [Proposed] Order shall govern the preservation, collection, and production of electronically stored information and documents in this action.**

**(1)     Description of Claims/Counterclaims/Cross-Claims:**

Roc-A-Fella Records, Inc. ("RAF, Inc.") owns all rights to the album *Reasonable Doubt*, including its copyright. RAF, Inc. alleges that Damon Dash ("Dash")—a minority shareholder in the company—unlawfully stole and attempted to auction the copyright to *Reasonable Doubt*. As a result, RAF, Inc. filed this action, asserting claims for declaratory relief (regarding the ownership of and rights to *Reasonable Doubt*), breach of fiduciary duty, conversion, replevin, and unjust enrichment. RAF, Inc. also sought injunctive relief. On July 2, 2021, the Court preliminarily enjoined Dash from "selling, assigning, pledging, encumbering, contracting with regard to, or in any way disposing of any property interest in *Reasonable Doubt*, including its copyright." (ECF No. 27 at 1 (emphasis added).)

Dash contends that he did not steal or attempt to sell the copyright to *Reasonable Doubt*. Rather, he merely sought to sell his one-third ownership interest in RAF, Inc. Dash further contends that RAF, Inc. filed this action without authority and, therefore, brings a counterclaim for declaratory relief regarding, among other things, RAF, Inc.'s ability to enter into contracts to retain counsel and file lawsuits.

   **(a)     Plaintiff's Estimated Monetary Damages and Description of Other Relief Sought:**

RAF, Inc. seeks the following categories of damages: general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Dash's wrongdoing; nominal damages; punitive damages; pre-judgment and post-judgment interest at the maximum rate allowable by law; and the cost of suit and attorneys' fees. RAF, Inc. also

seeks a judgment declaring the following: (a) RAF, Inc. owns all the rights to *Reasonable Doubt*, including its copyright; (b) Dash, as a RAF, Inc. shareholder, has no direct ownership interest in *Reasonable Doubt*; (c) Dash is not permitted to sell any interest in *Reasonable Doubt*; and (d) Dash must transfer to RAF, Inc. any NFT or other asset in his possession, custody, or control reflecting rights to *Reasonable Doubt*.

**(b)   Defendant's Estimated Damages on any Counterclaim/Cross-Claims and Description of Other Relief Sought:**

Dash seeks declaratory relief regarding, among other things, RAF, Inc.'s ability to enter into contracts to retain counsel and file lawsuits. Dash also seeks the following categories of damages: the cost of suit and attorneys' fees.

**(2)   Meet and Confer.** Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.

Date of parties' meet and confer conference: July 5, 2021.

**(3)   Preservation.**

**(a)   The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to:**

RAF, Inc. will preserve and retain email correspondence, text messages, instant messages, ephemeral data, business records and communications, financial and transactional records and spreadsheets, and such other documents that it comes to understand are reasonably related to the matters set forth in the pleadings.

Dash will preserve and retain email correspondence, text messages, instant messages, ephemeral data, business records and communications, financial and transactional records and spreadsheets, and such other documents that he comes to understand are reasonably related to the matters set forth in the pleadings.

**(b)   State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.**

The parties have not disclosed or agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.

**(4)  Collection**

    **(a)  State the extent to which the parties have agreed on the scope of documents to be collected (e.g., custodians and files/folders, servers, databases) for search and review and agreement on methods of collection.**

The parties have not agreed on the scope of documents to be collected for search and review.

    **(b)  Source(s) of Electronically Stored Information. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:**

The parties' sources of electronically stored information include mail correspondence, text messages, instant messages, ephemeral data, business records and communications, financial and transactional records and spreadsheets, and such other documents that it comes to understand are reasonably related to the matters set forth in the pleadings.

    **(c)  Custodians/Databases.  The parties have agreed that data will be collected from the following custodians/databases for review:**

RAF, Inc.'s Custodians:  RAF, Inc. and BDO USA, as well as their respective computers and mobile devices.

Dash's Custodians:  Damon Dash as well as his respective computers and mobile devices.

**(5)  Search and Review**

    **(a)  The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. (Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc.) To the extent the parties have reached agreement as to search and review methods, provide details below:**

The parties propose to use and exchange keyword search lists to run against the parties' respective document collections.  This proposal includes:  (i) that initial keyword search lists are exchanged no later than August 11, 2021; (ii) that the parties agree to meet and confer in good faith to address any disputes with regard to the initial keyword search lists; and (iii) that the parties reach agreement on final keyword search lists no later than August 18, 2021.  After the final keyword search lists are run against the parties' respective document collections, the parties

shall conduct a privilege review and proceed with production of all responsive, non-privileged documents.

**(6)  Production**

    **(a)  Limitations on Production. The parties have discussed factors relating to the scope of production, including but not limited to:  (i) number of custodians; (ii) date ranges for which potentially relevant data will be drawn; (iii) timing of productions (including phased discovery or rolling productions); (iv) prioritization of review; and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:**

RAF, Inc. will produce documents from its custodians:  RAF, Inc. and BDO USA. The date ranges for potentially relevant data are April 1, 2021, to June 18, 2021.  RAF, Inc. may employ a rolling production to facilitate an efficient production of documents following review of the same.

Dash will produce documents from his custodians:  Damon Dash.  The date ranges for potentially relevant data are April 1, 2021, to June 18, 2021.  Dash may employ a rolling production to facilitate an efficient production of documents following review of the same.

    **(b)  Form(s) of Production and Metadata to be produced:**

        **(1)  The parties have readied the following agreements regarding the form(s) of productions and metadata fields to be produced:**

The parties attach as Exhibit A their proposal for the form of productions and metadata fields to be produced, to the extent possible.

        **(2)  Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):**

The parties' position as to any exceptions to the form of production indicated above is as set forth in Exhibit A.

        **(3)  Methods to expedite review. The parties have discussed and agree to the following (e.g., de-deduplication, email threading, etc.)**

To the extent possible, the parties have agreed to de-duplication and email threading prior to producing documents to the requesting party.

        **(4)  Privileged Material**

The parties shall comply with Federal Rule of Civil Procedure 26(b)(5)(A) and exchange privilege logs by no later than October 1, 2021.

      The parties agree to meet and confer in good faith regarding whether to seek a F.R.E. 502(d) order in this case.

**The preceding constitutes the agreement(s) reached between the parties to certain matters concerning electronic discovery as of this date. Counsel certify that in connection with preparation of this ESI Plan and [Proposed] Order they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.**

Party: ROC-A-FELLA RECORDS, INC.    By: */s/ Alex Spiro*

Party: DAMON DASH    By: */s/ Natraj Bhushan*

DATED: July 29, 2021
       New York, New York

**SO ORDERED;**

_____
John P. Cronan
United States District Judge

**Exhibit A**

**The Parties' Preferred Production Formatting:**

- **Image Format:** Black-and-white Group IV Single-Page TIFFs (300 DPI). Color images should be provided in .JPG format when color is necessary. Image file names should match the page identifier for that specific image and end with the .tif (or .jpg if needed) extension.

- **Database Load Files:** Documents produced shall be provided with (i) Standard Concordance delimited load file(s) and (ii) Opticon delimited cross-reference file(s). Concordance load files shall contain the fields listed in Table A.

- **OCR/Extracted Text Format:** Document level text files named for the Bates number corresponding to the first page of the document. Do not include text in the load file. Text files should be in a directory named "TEXT."

- **Natives:** Documents produced in native file format shall be labeled, to the extent practicable, by assigning a Bates number as the filename (e.g., ABC0000001.xls). The load file should contain a field called "NATIVE" with the path to the corresponding native file. Native files should be in a directory named "NATIVES."

    - Excel spreadsheets and other files that cannot be imaged in a useful manner should be produced in native format to enable the parties to review those files. If there are non-printable files in the production set (mpg, wav, mdb, etc.), they should be produced as native files.

    - Counsel may seek supplemental production of native files for any produced images that are deemed unusable, unsearchable, or unduly burdensome.

- **Paper Documents:** If a party converts paper documents into electronic format, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. For each document the title or subject and date should be captured as metadata. If the document was originally an email and it now exists only in paper form, the to / from / cc / date and subject should be captured as metadata too.

6

| TABLE A | |
|---|---|
| **Field** | **Description** |
| BegProd | Bates number corresponding to the first page of the document. |
| EndProd | Bates number corresponding to the last page of the document. |
| BegProdAtt | Bates number corresponding to the first page of a document family. |
| EndProdAtt | Bates number corresponding to the last page of a document family. |
| PageCount | Number of pages/images for the document. |
| Custodian | Name of the person from whom the file is produced. |
| Author | The author of the document or sender of email |
| Recip | The recipient(s) of the document/email. |
| CC | The individuals copied on the document/email, if any. |
| BCC | The individuals blind copied on the email, if any. |
| DocTitle | The title of a document or the subject of an email. |
| DocType | Type of document, such as Microsoft Word, Adobe Portable Document Format, Microsoft Excel. |
| Date Sent | The date an email was sent. |
| Time Sent | The time an email was sent. |
| Date Received | The date an email was received. |
| Time Received | The time an email was received. |
| Date Created | The date the file was created, if available. |
| Time Created | The time the file was created, if available. |
| Date Last Modified | The date the file was last modified, if available. |
| Time Last Modified | The time the file was last modified, if available. |
| Folder | The folder the document is stored in. |
| LastAuthor | The name of the person who last edited the document |
| MD5Hash | MD5HASH of electronic files |
| TextPath | Path to the records' corresponding text file. Do not include actual text in load files. |
| Native | The file path that the corresponding production Native file resides in. |